```
                      UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF MISSISSIPPI
                            NORTHERN DIVISION
```

VINSON BALLARD                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:17CV255TSL-RHW

JACKSON STATE UNIVERSITY;
DR. MARK G. HARDY, INDIVIDUALLY AND
IN HIS PROFESSIONAL CAPACITY;
DR. CAROLYN MEYERS, INDIVIDUALLY AND
IN HER PROFESSIONAL CAPACITY;
DR. CURTIS JOHNSON, INDIVIDUALLY AND
IN HIS PROFESSIONAL CAPACITY;
ATTY. DAVID BUFORD, INDIVIDUALLY AND
IN HIS PROFESSIONAL CAPACITY;
WAYNE GOODWIN, INDIVIDUALLY AND IN
HIS PROFESSIONAL CAPACITY                                  DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Defendants Dr. Mark G. Hardy, Dr. Michael Thomas, Dr. Curtis Johnson, Attorney David Buford, and Wayne Goodwin have filed in this cause a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Defendant Jackson State University (JSU) has separately moved for judgment on the pleadings or, in the alternative, for summary judgment. Plaintiff Vinson Ballard has filed responses to both motions. The court, having considered the motions and responses, pertinent attachments, and court records, concludes that defendants' motions should be granted and this case dismissed.[1]

---

[1] Defendants have recently filed herein a motion to consolidate this case with <u>Ballard v. Jackson State Univ., et al.</u>, Civ. Action No. 3:13CV672DPJ-FKB (S.D. Miss.). That motion is not properly before the undersigned and would be denied for that

Plaintiff Ballard previously filed suit against Jackson State University (JSU) and a number of JSU officials alleging claims of sex discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*; retaliatory discharge under Title VII; and "association discrimination" under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act of 1974, 29 U.S.C. § 795.[2] See Ballard v. Jackson State Univ., et al., 3:13CV672DPJ-FKB. By order entered October 20, 2014, Judge Daniel P. Jordan dismissed with prejudice Ballard's claims for sex discrimination and for alleged association discrimination in violation of the ADA and Rehabilitation on a defense motion for judgment on the pleadings. He denied the motion as to Ballard's claim for retaliatory discharge, finding that claim was sufficiently pled. Thereafter, on June 16, 2015, following discovery, a settlement conference was held with the magistrate judge. Plaintiff appeared with his counsel, and JSU appeared through its counsel. The record reflects that the parties reached a settlement, whereupon the case was dismissed with prejudice as

---

reason; however, the court's ruling on the pending dispositive motions makes that motion moot.

[2] His original complaint in the prior action was filed *pro se* and included additional claims, including a federal claim for age discrimination and a state law claim for intentional infliction of emotional distress. After the defendants in that action moved to dismiss, Ballard, who by then was represented by counsel, filed an amended complaint which dropped these additional claims.

2

to all parties. As part of the settlement, Ballard agreed to "sign a full, final, and complete release of all claims against Defendant, and the Mississippi Board of Trustees of State Institutions of Higher Learning, and their employees, agents, officers, etc." The court retained jurisdiction to enforce the settlement agreement. Two months later, Ballard, again appearing *pro se* (having terminated his counsel), filed a motion to withdraw settlement. The motion was referred to the magistrate judge for a ruling, and on January 5, 2016, the magistrate judge entered a report and recommendation to deny the plaintiff's motion and to grant a defense counter-motion for enforcement of the settlement agreement. Judge Jordan adopted the report and recommendation over Ballard's objection. His order recited that the parties' "settlement agreement constitutes a global release as to all claims and as to all parties with prejudice." Ballard appealed this ruling to the Fifth Circuit which issued its order affirming the lower court's ruling on September 9, 2016, stating:

> Plaintiff-Appellant Vinson Ballard a/k/a Rev. Vinson Ballard, M.S., proceeding *pro se* on appeal after being represented by counsel in the district court, makes largely unintelligible complaints about the proceedings and results of a court supervised and approved settlement of various employment claims between Ballard and Jackson State University, the sole remaining Defendant-Appellee. We have carefully and painstakingly reviewed the record on appeal, including the briefs of the parties and the various rulings and orders of the magistrate judge and the district court from which Ballard appears to appeal. As a result of our review, we find no reversible error in any of the proceedings or

3

>   rulings, and conclude that Plaintiff-Appellant Ballard
>   has had all the procedural and substantive process to
>   which he is due. The orders and rulings from which
>   Ballard appeals are, in all respects, AFFIRMED.[3]

Ballard v. Jackson State Univ., et al., No. 16-60111 (5th Cir. Sept. 9, 2016). Despite the courts' orders, Ballard has refused to execute the settlement agreement and release required by the terms of the settlement.[4]

Ballard filed the present action on April 11, 2017 against JSU, and against the following JSU officials: Mark G. Hardy, former Provost/Vice President of Academic Affairs; Michael Thomas, former Vice President for Business and Finance; former JSU President Dr. Carolyn Meyers; Wayne Goodwin, former Associate Vice President for Facilities and Construction Management; Dr. Curtis Johnson, former administrator; and David Buford, former Assistant

---

[3] Plaintiff evidently undertook to file a petition for writ of certiorari with the United States Supreme Court. However, exhibits Ballard has attached to his response to defendants' motion reflect that his petition was returned, unfiled, on account of his failure to comply with applicable Supreme Court rules.

[4] Defendants in the prior action recently moved to reopen that case to enforce the parties' settlement agreement. On August 29, 2017, Judge Jordan entered an order giving Ballard an opportunity to comply with his prior order by signing the settlement agreement documents within ten days. On September 8, 2017, Ballard delivered to the court an executed "Settlement Agreement and Release" which he apparently drafted himself. Defendants have been given an opportunity to sign and return the document to the court if it is consistent with their understanding of the parties' settlement. Though their response is not yet due, it is apparent the document Ballard has prepared and signed is not reflective of the terms of the settlement set forth in the court record.

4

General Counsel for JSU.  Of the named defendants, only Mark Hardy was not also a defendant in Ballard's previous lawsuit.  Liberally construing his complaint in this cause,[5] Ballard alleges claims in three counts:  Count I, for retaliatory discharge under Title VII; (2) Count II, brought under 42 U.S.C. §§ 1981 and 1983 for "constitutional violations"; and Count III, for intentional infliction of emotional distress.

Ballard's complaint in this case, like his complaint in the previous case, is confusing and difficult to follow.  It is, as the Fifth Circuit described his brief on appeal in the earlier case, "largely unintelligible."  It is clear, however, that this complaint covers much of the same ground as his earlier complaint.  As in his amended complaint in the previous case, Ballard alleges herein that JSU's June 2012 termination of his employment as Americans With Disabilities Act Coordinator for JSU was in retaliation for his having engaged in activity protected under Title VII, and for his having reported JSU's non-compliance with requirements of the ADA and the Rehabilitation Act.  His complaint in this case also includes allegations and/or claims that were

---

[5] See Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976))).

asserted in his original complaint but not in his amended complaint in the prior case, including an allegation that he was "subjected to work place discrimination because of his age" and a claim for intentional infliction of emotional distress vaguely based on defendants' unspecified "continued actions and conduct" which have "evoke[d] outrage and revulsion" and which have been "malicious, wanton, grossly, careless, indifferent and/or reckless."

In contrast to his complaint and amended complaint in the previous case, Ballard's complaint in this case includes allegations relating to alleged fraud and violation of his due process rights in connection with his termination.[6] Granted, his complaint is difficult to understand, especially in its particulars. A principal theme that comes through, however, is his assertion that at or around the time of his termination (and evidently at all times since), defendants were in possession of evidence bearing on JSU's asserted reason for his termination which they fraudulently withheld/concealed/hid from him, which was

---

[6] The court notes that Ballard's response to JSU's motion sets forth a list of "constitutional and statutory provisions involved." This list includes a number of statutes and constitutional provisions that do not appear, even by implication, in his amended complaint, which therefore will be disregarded, including the Equal Protection Clause of the Fourteenth Amendment; 42 U.S.C. § 1981; and "the Freedom of Speech, Religion and the Right to Assembly", presumably as guaranteed by the First Amendment.

a violation of his due process rights.[7]  Ballard's response to JSU's motion sheds some light on the factual basis for this claim, though it is still murky.  Ballard appears to contend that his termination on June 12, 2012 purportedly stemmed from a grievance filed against his office by a disabled student who asserted that a failure to accommodate his disability prevented him from being able to participate in the Spring 2011 commencement exercises.  Ballard evidently contends he was not made aware of this grievance; and he further asserts that he has recently discovered evidence – including a photograph of him assisting students at the 2011 Spring commencement – which he believes demonstrates that the grievance had no merit and that JSU had no legitimate reason to terminate his employment.  Ballard asserts he has also discovered evidence which tends to show that defendants participated in a

---

[7]  While the court has not carefully reviewed all the papers Ballard filed in his previous case, defendants have not indicated that Ballard alleged or attempted to allege or in any way advanced a due process claim.  However, while his complaint in that case did not refer to fraud by defendants, in various submissions to district court and to the Fifth Circuit, he repeatedly argued that JSU had committed fraud.  For example, in at least three separate submissions to the Fifth Circuit, Ballard claimed that "JSU committed fraud in covering up his actions and placing the blame on me when the photo of the Undergraduate Commencement at Veterans Memorial Stadium in 2011 clearly shows me assisting the individual across the stage as I did in my official role at that particular time...."  He further repeatedly represented to the court that "[t]here are relative documents that were forwarded through discovery that they have tried to get sealed that if the court would allow that would transparently showed that they committed fraud as I will show if allowed the opportunity."

scheme to "sabotage his official [ADA] operations" and which reveals their motive for getting rid of him.[8]

In their motion for judgment on the pleadings, the individual defendants have argued that all of Ballard's claims against them in this case are foreclosed by the settlement in the prior litigation. They note, in this regard, that under Fifth Circuit precedent, "[s]ettlement agreements waiving substantial rights of parties and compromising a disputed liability are as conclusive as judgment following full litigation." Liberto v. D.F. Stauffer Biscuit Co., 441 F.3d 318, 325 (5th Cir. 2006) (citing J. Kahn Co. v. Clark, 178 F.2d 111, 114 (5th Cir. 1949)); see also Cia Anon Venezolana de Navegacion v. Harris, 374 F. 2d 33, 34 (5th Cir. 1967) ("[A]n agreement of the parties settling a disputed liability is as conclusive of their rights as a judgment would be if it had been litigated instead of compromised." (internal quotations omitted)). In its separate motion, JSU similarly argues that based on the doctrines of res judicata and/or collateral estoppel, Judge Jordan's order of dismissal with prejudice pursuant to the parties' settlement of the earlier case

---

[8] Plaintiff describes this supposed motive in his response to JSU's motion. He claims that JSU had attempted to get him to falsify documents that would have allowed Carolyn Meyers' daughter and son-in-law to make a $27.7 million business deal, apparently relating to food service at JSU. He states that he refused to falsify the documents, which is "why JSU et al sabotaged [his] JSU office operations and denied him the notice of due process in doing so."

8

is entitled to preclusive effect and bars Ballard's claims in this case.

Although Ballard has not yet executed the release required by the parties' settlement agreement, there is nevertheless an enforceable settlement agreement. The Fifth Circuit has held that "[a] settlement is valid and enforceable even if it contemplates the parties signing a release at a later date unless the parties explicitly provide that a valid contract will not be formed until the parties execute a formal, finalized agreement. Even if one party ultimately fails to execute or sign the final formal release documents, that does not void the original agreement or render it deficient from the outset." In re DEEPWATER HORIZON, 786 F.3d 344, 355 (5th Cir. 2015). Judge Jordan found there was an enforceable settlement agreement between the parties, and the Fifth Circuit affirmed that decision. As part of the settlement, Ballard agreed to release any and all claims against JSU, and all its employees, officers and agents. Accordingly, he is barred from pursing his claims in this cause.[9]

---

[9] Ballard asserts in his response to defendants' motions that "fraudulent actions [were] carried out by JSU ET AL within the actions associated with the referenced settlement agreement" and that the settlement agreement forwarded to him by defense counsel in his earlier case "went beyond the situation involving the issue of Retaliation that [he] was lead to believe the Settlement Conference was supposed to be about." Ballard's previous efforts to avoid enforcement of the settlement agreement on these same bases were rejected by Judge Jordan and the Fifth Circuit. The undersigned has no authority to invalidate or disregard the settlement.

> Alternatively, res judicata bars his claims.
>
> "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980). Res judicata "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994). Res judicata prevents a later suit, such as this one, from collaterally attacking a prior judgment by a court of competent jurisdiction. See In the Matter of Williams, 298 F.3d 458, 461 (5th Cir. 2002) (prior final order cannot be collaterally attacked).

Oreck Direct, LLC v. Dyson, Inc., 560 F.3d 398, 401 (5th Cir. 2009).

The Fifth Circuit has held that a "settlement agreement ... will carry res judicata effects so long as the settlement satisfies the four part test we use in evaluating the applicability of res judicata." Matter of W. Texas Mktg. Corp., 12 F.3d 497, 500 (5th Cir. 1994).[10] The four requirements that must be met for a claim to be barred by res judicata are: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." Petro-Hunt, L.L.C. v. United States, 365 F.3d 385, 395 (5th Cir. 2004). Generally, where it

---

[10] Federal law determines the res judicata effect of a prior federal court judgment. Meza v. Gen. Battery Corp., 908 F.2d 1262, 1265 (5th Cir. 1990) (citation omitted).

10

applies, res judicata "bars all claims that were or could have been advanced in support of the cause of action on the occasion of its former adjudication, not merely those that were adjudicated." Nilsen v. Moss Point, 701 F.2d 556, 560 (5th Cir. 1983) (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)). The Fifth Circuit has held that "[a] settlement agreement approved and embodied in a judgment by a court is entitled to full res judicata effect." Matter of W. Texas Mktg. Corp., 12 F.3d 497, 500 (5th Cir. 1994) (internal quotation marks and citation omitted). Cf. Russell v. SunAmerica Sec., Inc., 962 F.2d 1169, 1173 (5th Cir. 1992) (recognizing that "a consent judgment is a judgment on the merits, and is normally given the finality accorded under the rules of claim preclusion.") (internal quotation marks and citation omitted). In the court's opinion, all four requirements for application of res judicata are satisfied in this case.[11]

---

[11] Unlike JSU, the individual defendants have not asserted res judicata and/or collateral estoppel. See Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 n.2 (5th Cir. 2005) ("[G]enerally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense."). However, JSU has done so; and since the individual defendants have asserted the settlement as a bar to this case, and the defense is as pertinent to the individual defendants as it is to JSU, and as plaintiff has had an opportunity to respond to JSU's res judicata argument, the court is of the opinion that it may properly consider the res judicata defense as it applies to all of the defendants, and not just to JSU.

11

All but one of the parties to this action were parties to the previous suit. Only Mark Hardy was not a party to that earlier action. However, "res judicata applies to parties in privity with the parties named in the previous suit," Brown v. Houston Indep. Sch. Dist., 46 F.3d 66 (5th Cir. 1995); and privity clearly exists between Hardy and the other defendants. "Privity is a legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." Liberty Mut. Ins. Co. v. Gunderson, 305 F. App'x 170, 176 (5th Cir. 2008) (internal quotation marks and citation omitted). Parties are considered to be in privity when they share an identity of interests in the "basic legal right that is the subject of litigation." In re Erlewine, 349 F.3d 205, 210 (5th Cir. 2003). "Defendants who are members of the same government agency are generally treated as being in privity for purposes of being able to assert a res judicata defense." Chalmers v. City of Dallas, No. 3:14-CV-36-N, 2014 WL 7174289, at *7 (N.D. Tex. Dec. 16, 2014) (citing Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980) (res judicata dismissal of second suit that added IRS commissioner as defendant affirmed because there was "privity between officers of the same government" so that judgment in favor of IRS agents in first suit barred re-litigation); McCoy v. Blossom, No. 09-cv-2146, 2014 WL 1120346 (W.D. La. Mar. 20, 2014) (finding res judicata where

12

newly-named defendants were correctional officers at the same jail as those named in previous lawsuit)). See also Brown, 46 F.3d 66 (5th Cir. 1995) (individual employees of school district were in privity with the school district).

The second requirement for application of res judicata is met as the court plainly had jurisdiction over Ballard's prior lawsuit. Also, Judge Jordan's order of dismissal with prejudice was a final judgment on the merits, so the third requirement is satisfied. See Oreck Direct, 560 F.3d at 401 ("A dismissal which is designated 'with prejudice' is 'normally an adjudication on the merits for purposes of res judicata.'" (citing Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 n.8 (5th Cir. 1993)).

To determine whether two suits involve the same cause of action, the Fifth Circuit generally uses a "transactional test ... under which the critical question is not the relief requested or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." N.Y. Life Ins. Co. v. Gillispie, 203 F.3d 384, 387 (5th Cir. 2000) (internal quotation marks and citation omitted). "[A] prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] transaction arose." Oreck Direct, 560 F.3d at 402 (internal quotation marks and citation omitted). The Fifth Circuit held in Oreck Direct

13

that the transactional test applies even in the context of a final judgment based on a settlement, though it suggested that it may be permissible to determine the scope of res judicata by the parties' actual intentions as reflected in a settlement agreement where the settlement agreement was made part of the dismissal order. See Oreck Direct, 560 F.3d at 402 (citing Hospitality House, Inc. v. Gilbert, 298 F.3d 424, 430 (5th Cir. 2002) (explaining that a district court may make a settlement agreement part of its dismissal order "'either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'") (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 380-81, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994))). "'The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order.'" Id. (quoting Kokkonen, 511 U.S. at 381, 114 S. Ct. 1673). Here, Judge Jordan's order effectively incorporated the terms of the settlement agreement. He acknowledged that the settlement agreement was a global release as to all claims and as to all parties with prejudice and he stated that the court was retaining jurisdiction to enforce the settlement agreement. If the settlement agreement defined the scope of res judicata effect of the court's order of dismissal in the first case, then Ballard's claims would obviously be barred since under the terms of the

14

settlement agreement, Ballard agreed to release any and all claims against JSU, its employees, agents and officers.

The same conclusion obtains if the determination of whether this case and the earlier case involved the same cause of action is made on the basis of a transactional test. Ballard's claims in this case are largely duplicative of his claims in the earlier litigation. He does purport to add due process and fraud claims, but those claims also relate to his termination, as did his claims in the prior case. Accordingly, all the requirements for res judicata are present. It follows that this case is due to be dismissed with prejudice.

Accordingly, it is ordered that Ballard's complaint in this cause is dismissed with prejudice.[12]

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED this 18th day of September, 2017.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[12] Defendants offer additional bases for dismissal, including that some or all of plaintiff's claims are barred by the statute of limitations and/or fail to state a claim for relief and/or are barred by various immunity doctrines. While these arguments do have merit, the court need not address them in light of its conclusion that plaintiff's claims are barred by the settlement agreement and by res judicata.